UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

RICHARD ANDREOLI,

        Plaintiff,

vs.

SOLANTIC CORPORATION, D/B/A BAPTIST
CARESPOT HEALTHCARE,

        Defendant.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Richard Andreoli sues Defendant Solantic Corporation d/b/a Baptist CareSpot Healthcare and allege:

## INTRODUCTION

1. Plaintiff Richard Andreoli is the victim of medical malpractice. As a result of Defendant's negligence, his serious condition went undiagnosed and worsened. Within days he developed sepsis and ultimately had to have both of his legs amputated and portions of his fingers on his dominant hand. Mr. Andreoli is a resident and citizen of Florida

2. He is presently a claimant, along with his wife, in a medical malpractice arbitration proceeding pursuant to Chapter 766, Florida Statutes, *Andreoli v. Solantic Corporation*, Case No. 20-2050MA, State of Florida, Division of Administrative Hearings (the "Arbitration").

3. Defendant Solantic Corporation d/b/a Baptist CareSpot Health ("Baptist CareSpot") has its principal place of business in Brentwood, Tennessee, but owns and operates an

urgent care clinic in Middleburg, Florida, where Mr. Andreoli was negligently treated ("CareSpot Clinic").

4. Pursuant to the Florida medical malpractice arbitration law, section 766.207, Florida Statutes, Defendant Baptist CareSpot agreed not to contest liability and to arbitrate the Andreolis' damages arising from the alleged medical malpractice. Accordingly, liability is not at issue in the Arbitration. Only the amount of the damages to which the Andreolis are entitled is contested.

5. Mr. Andreoli will require extensive medical care and equipment for the remainder of his life. Because of the debilitating and permanent nature of his injury, Mr. Andreoli applied for and was awarded disability benefits under the federal Supplemental Security Income ("SSI") program and, so, will be eligible to receive Medicare benefits two years after his SSI disability entitlement date. 42 C.F.R. § 406.12(d)(1). Any future Medicare healthcare benefits Mr. Andreoli receives will be paid by the Centers for Medicare Services ("CMS"). CMS is the federal agency that administers the Medicare program.

6. Plaintiff has argued in the Arbitration that he is entitled to and must recover damages for the expenses that will be paid for by Medicare so that Mr. Andreoli may comply with CMS's rights to reimbursement and federal law designating Medicare the secondary payer. However, on December 18, 2020, the Administrative Law Judge ("ALJ") in the Arbitration rejected this argument. The ALJ entered an order finding that Mr. Andreoli may not recover damages in the Arbitration for those expenses that will be paid for by Medicare. This leaves Mr. Andreoli without the funds to repay Medicare and renders Medicare the primary payer of his damages.

7. Plaintiff has filed this action because he is in doubt as to his legal rights and

obligations under federal law and the Florida and federal constitutions. Plaintiff requires clarification on the federal law that applies and whether that law preempts or prohibits Defendant's interpretation of the Florida statutes governing the award of arbitration damages.

## JURISDICTION AND VENUE

8. This is an action for declaratory judgment brought pursuant to Chapter 28, U.S.C. § 2201 and Federal Rule of Civil Procedure 57. The court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 2201 (Declaratory Judgment Act), and 28 U.S. C. § 1332 (Diversity). As alleged below, an actual case or controversy concerning federal law and Mr. Andreoli's rights under the United States Constitution has arisen between the parties, which threatens injury to Plaintiff by depriving Mr. Andreoli of the damages to which he is entitled and yet still rendering Plaintiff liable for the reimbursement of conditional payments made by government programs.

9. This Court has diversity jurisdiction because the controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Mr. Andreoli's claims that form part of the same case or controversy.

11. Pursuant to 28 U.S.C. § 1391, venue is proper in the Middle District of Florida, where a substantial part of the events giving rise to the claim for declaratory relief occurred.

12. This Court has personal jurisdiction over the Defendant Baptist CareSpot because it conducts business in this District.

## FACTS GIVING RISE TO COMPLAINT

A. **Mr. Andreoli's Injuries and Damages.**

1. On February 9, 2019, Mr. Andreoli went to CareSpot Clinic, owned and operated by Defendant, with symptoms of a serious bacterial infection. Defendant's staff failed to

Case 3:20-cv-01423-TJC-JBT   Document 1   Filed 12/18/20   Page 4 of 16 PageID 4

appreciate the nature of seriousness of his condition. They diagnosed him as having a virus and sent him home.

2. Left untreated, Mr. Andreoli's conditions worsened. After just a few days, he had developed sepsis. He collapsed and had to be transported to a hospital. Ultimately, as a result of the untreated infection, both of Mr. Andreoli's legs and portions of his fingers on his dominant hand had to be amputated.

3. Thus, as a result of Defendant's negligence, Mr. Andreoli has suffered permanent physical and mental injuries. Whereas Mr. Andreoli was fully functional and working in a successful home sales business before his incident, he is now permanently disabled, experiences pain and discomfort, and is dependent upon others for assistance.

4. Mr. Andreoli will require significant medical services and equipment for the remainder of his life.

5. Given the severity of his disability, Mr. Andreoli applied for and was granted disability benefits from the SSI program. Accordingly, under the current law, Mr. Andreoli will be eligible to receive Medicare benefits 24 month from the date of his SSI eligibility. At that point, and assuming the Medicare program operates as it does today, Mr. Andreoli's health care providers will bill Medicare for the cost of his extensive medical care and Medicare will make conditional payments to these providers on Mr. Andreoli's behalf.

**B.  The Medical Malpractice Arbitration.**

6. The Arbitration is proceeding pursuant to section 766.207, Florida Statutes, the statute authorizing medical negligence arbitration proceedings as an alternative to traditional civil tort actions. In arbitration, liability is admitted, and only damages are arbitrated, but the claimant's non-economic damages are capped by statute at $250,000 per incident. Fla. Stat. 766.207(7).

4

Grossman Roth Yaffa Cohen, 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134

7. By way of background, Section 766.106, Florida Statutes, requires medical malpractice claimants to give prospective defendants pre-suit notice of a lawsuit and gives these prospective defendants the opportunity to investigate the claim over a period of three months. After that time, claimants or prospective defendants may elect to have damages determined by an arbitration panel by serving a request for voluntary binding arbitration of damages.

8. When a prospective defendant agrees to arbitration, it chooses to admit liability. As explained by the court in *Estrada v. Mercy Hospital, Inc.*, 121 So. 3d 51, 53-54 (Fla. 3d DCA 2013): "[I]n a proceeding for voluntary binding arbitration of a medical negligence claim, the liability of Defendant is admitted, and the only issue is damages, which are set by a panel of three arbitrators, one selected by the claimant, one selected by the defendant, and an administrative law judge designated by the Division of Administrative Hearings who serves as the chief arbitrator."

9. In this case, the presuit investigatory period expired and on March 9, 2020, Defendant Baptist CareSpot sent a Request for Voluntary Binding Arbitration of Damages to Plaintiff, pursuant to section 766.207, Florida Statutes. Plaintiff accepted this offer to arbitrate.

10. Accordingly, the arbitration was initiated with the filing of a stipulated Request for Arbitration.

11. In the Arbitration, Plaintiff seeks to recover from the Defendant Baptist CareSpot his non-economic damages, which are capped pursuant to section 766.207(7), and the cost of Mr. Andreoli's past and future medical care and other economic damages, including the cost of the care paid for by Medicare.

12. Defendant has demanded, however, that Medicare benefits paid on Mr. Andreoli's behalf in the future be set off from the awarded damages in the Arbitration.

13. The arbitration proceeding is scheduled to begin on January 25, 2021.

## C. The Dispute Over the Payment of Future Medical Care and the Arbitration Order.

14. Through the Medicare program, Mr. Andreoli will be eligible for Medicare benefits, meaning that CMS will make conditional payments for medical services on behalf of Mr. Andreoli to the facilities where he is treated and to his medical providers.

15. So, although Defendant's negligence caused Mr. Andreoli's injury, Mr. Andreoli's medical care will be paid for, conditionally, by the American taxpayer.

16. From the outset, the parties have disputed whether the Medicare benefits that Mr. Andreoli may receive in the future can be deemed a "collateral source" and set-off from Mr. Andreoli's economic damages award in the Arbitration, or whether federal law prohibits such treatment.

17. Defendant contends that whatever economic damages Mr. Andreoli has sustained must be reduced by the Medicare payments that may be paid in the future for Mr. Andreoli's care. Plaintiff contends this interpretation is prohibited by federal law, extending to the federal government a right of reimbursement and designating the Medicare program as the secondary payor of expenses for tort victims.

18. The statutes that govern are sections 766.207(7)(a) and (c), Florida Statutes, and the definition of "collateral source" set forth in section 766.202(2)(a) (together the "Setoff Provisions"). Section 766.207 contains "offset" language providing that "past and future medical expenses" shall be awardable "offset by any collateral source payments," and that "[d]amages for future economic losses . . . shall be offset by future collateral source payments." Fla. Stat. § 766.207(7)(a), (c).

19. "Collateral sources," for purposes of section 766.207 is defined to include "federal . . . public programs providing medical expenses," but to specifically exclude payments that are "prohibited" from being offset from damages under "federal law."

20. Section 766.202 defines "collateral sources" as follows:

(2) "Collateral sources" means any payments made to the claimant, or made on his or his behalf, by or pursuant to:

(a) The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits, **except as prohibited by federal law**.

(emphasis added).

21. Mr. Andreoli maintains that the Medicare benefits that he may receive cannot be deemed "collateral source payments" under this definition because federal law prohibits such treatment.

22. Indeed, under federal law governing the Medicare program, the federal government will make only *conditional payments* on Mr. Andreoli's behalf and CMS has a right to recover medical expenses incurred from the medical care of a Medicare beneficiary directly from the beneficiary, from the proceeds for any recovery the beneficiary makes, and from the beneficiary's attorneys. *See* 42 U.S.C § 1395y (b)(2), 42 C.F.R. §§ 411.22, 4.11.23(b), 411.24.

23. The purpose of the federal Medicare law, the Medicare Secondary Payor Act ("MSP"), is to make Medicare benefits secondary to benefits payable by a third-party payer and to ensure that the cost of treating injured persons, like Mr. Andreoli, to whom CMS makes care available, is born by those legally responsible for the injury, not the United States taxpayer. *See* 42 U.S.C § 1395y (b)(2), 42 C.F.R. §§ 411.22, 4.11.23(b), 411.24.

24. Thus, federal law requiring reimbursement for Medicare expenses preempts the Florida Statutes, which would excuse the tortfeasor from payment.

25. Notwithstanding that Medicare payments are only conditional and must be reimbursed, on December 18, 2020, the ALJ ruled on this issue, finding that payments made by Medicare "are collateral sources under section 766.202(2)(a), and must, therefore, be offset from the arbitration award under section 766.207(7)(a)." The ALJ did not address whether federal law prohibited such a setoff.

### D. The Impact of the Setoff to Which Defendant Contends it is Entitled.

26. The ALJ has now ruled that it will reduce Mr. Andreoli's damages, or apply an "offset," for all future conditional Medicare payments on Mr. Andreoli's behalf, and Defendant has failed to confirm that it will indemnify Mr. Andreoli and his lawyers against the enforcement of any liens for payments associated with Medicare.

27. Accordingly, Mr. Andreoli will soon be left in an impossible situation: he will be without sufficient funds to reimburse Medicare, as required, or to pay for his future care in the event Medicare reduces benefits or will not cover expenses at some point during his lifetime. For example, home health care is not covered by Medicare, which Mr. Andreoli requires. Nor are certain, advanced prosthetics covered by Medicare, and those that Medicare does cover, may only be replaced on the schedule set by Medicare.

28. Additionally, given that a damages award or settlement in an arbitration proceeding must be reported to Medicare, Medicare may refuse to pay for Mr. Andreoli's future medical expenses relating to his injury at some point. *See* 42 U.S.C. 1395y(b)(8)(A), (B) (requiring insurers to report to CMS any Medicare beneficiaries who receive a "settlement, judgment, award, or other payment (regardless of whether or not there is a determination or admission of liability).

29. The Government will also be left without the recovery to which it is entitled. If Mr. Andreoli is denied recovery of costs of the Medicare services, the Government will not receive the reimbursement from Mr. Andreoli to which it is entitled and will instead bear the entirety of the economic burden for Defendant's negligence. Thus, the American taxpayer will ultimately be responsible for paying for Mr. Andreoli's care, rather than Defendant.

30. This is the not the scheme provided for by federal law and it is also unconstitutional, as alleged below. The offset subverts the reimbursement rights provided under federal law and deprives Mr. Andreoli of the full extent of his economic damages which would otherwise be recoverable in a civil suit. The setoff also arbitrarily discriminates against Mr. Andreoli.

31. And the Setoff Provisions leave Mr. Andreoli's lawyers, Cronin & Maxwell PL, liable for the repayment of conditional payments made by CMS. *See* 42 C.F.R. § 411.24(g) (Medicare "has a right of action to recover its payments from any entity, including a beneficiary ... [or] attorney ... that has received a primary payment."); *Zinman v. Shalala,* 67 F.3d 841, 844-45 (9th Cir. 1995). Therefore, Mr. Andreoli's attorneys too have an obligation to ensure that Medicare is reimbursed.

32. Notwithstanding all of this, the ALJ and Defendant Baptist CareSpot apparently dispute that federal law prohibits a setoff for Medicare benefits and claim that CareSpot is entitled to a setoff in this case.

## COUNT I

## CLAIM FOR DECLARATORY JUDGMENT THAT FEDERAL LAW PREEMPTS OR PRHOBITS MEDICARE BENEFITS FROM BEING OFFSET FROM MR. ANDREOLI'S ECONOMIC DAMAGES

33. Plaintiff incorporates and realleges the allegations above and further alleges:

Grossman Roth Yaffa Cohen, 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134

34. There is an actual controversy between Plaintiff and the Defendant Baptist CareSpot regarding the application of federal law and Plaintiff is in doubt as to Mr. Andreoli's ability to recover the full extent of his damages, including those damages claimed arising from medical care paid for by Medicare in the future.

35. The MSP creates a cause of action by which the United States may recover "from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." 42 U.S.C. § 1395y(b)(2)(B)(iii).  This law allows the United States to seek reimbursement from the beneficiary herself, from the proceeds for any recovery the beneficiary makes, and from the beneficiary's attorneys.  S*ee also* 42 C.F.R. § 411.24(g) (Medicare "has a right of action to recover its payments from any entity, including a beneficiary ... [or] attorney ... that has received a primary payment.").

36. Given these rights to reimbursement, Medicare benefits cannot be a collateral source under the Setoff Provisions, as defined above, because such an application would subvert CMS's right to reimbursement from its beneficiary, Mr. Andreoli, and thus be "prohibited by federal law."

37. Defendant disagrees and asserts that it is entitled to a setoff against the awardable damages for the cost of the medical care paid for by Medicare and that may be paid for by this program in the future.

38. Because of this actual, present, and justiciable controversy, Mr. Andreoli stands to be deprived of the damages to which he is entitled.  Also, Mr. Andreoli's attorneys, Cronin & Maxwell PL, will also be liable for reimbursement of conditional payments made on Mr. Andreoli's behalf.  See 42 U.S.C. § 1395y(b)(2)(B)(iii).

39. Because of the uncertainty with respect to their rights, the Plaintiff cannot make any intelligent determination as to how to proceed with arbitrating his claim, presenting Mr. Andreoli's damages, and making provision for reimbursing Medicare.

40. Accordingly, Plaintiff requests that this Court declare federal law preempts and prohibits Medicare benefits from being offset from Mr. Andreoli's economic damages as a collateral source payment.

## COUNT II

### CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

41. Plaintiff incorporates and realleges the allegations above and additionally or alternatively alleges that:

42. The Setoff Provisions provide that once a medical malpractice defendant has offered to arbitrate, the Mr. Andreoli's economic damages shall be "offset" by "collateral source payments," including "federal . . . public programs providing medical expenses," but specifically excluding payments that are "prohibited" from being offset from damages under "federal law."

43. If Medicare benefits are considered collateral sources in arbitration, for Mr. Andreoli, who will be entitled to Medicare benefits, these Setoff Provisions will entitle the Defendant Baptist CareSpot to a setoff for the total care paid for by Medicare to Mr. Andreoli and that this program will pay on Mr. Andreoli's behalf in the future. This will leave Mr. Andreoli without the ability to recover compensation for future economic losses, rendering his unable to reimburse the government or to obtain the medical care of his choosing, and a burden on the taxpayer for the remainder of his life.

44. In this manner, the Setoff Provisions arbitrarily place Mr. Andreoli in a position different from that of a civil litigant who has not or will not receive medical care paid for by Medicare, and deprive Mr. Andreoli of equal protection under the law, in violation of Amendment XIV, Section 1 of the United States Constitution.  Under the Setoff Provisions, Mr. Andreoli is not treated like other medical malpractice claimants who would be entitled to the full extent of his damages.

45. Accordingly, Plaintiff requests that this court declare that the Setoff Provisions are unconstitutional and that Mr. Andreoli's Medicare benefits cannot be offset from Mr. Andreoli's economic damages as a collateral source payment.

## COUNT III

### CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

46. Plaintiff incorporates and realleges the allegations above and alleges additionally or in the alternative:

47. If Medicare benefits are considered collateral sources in arbitration for Mr. Andreoli, these Setoff Provisions will entitle the Defendant Baptist CareSpot to an offset for the total care that this program will pay on Mr. Andreoli's behalf in the future.  This will leave Mr. Andreoli without the ability to recover compensation for future economic losses, rendering his unable to reimburse the government or to obtain the medical care of his choosing, and a burden on the taxpayer for the remainder of his life.

48. In this manner, the Setoff Provisions deprive Mr. Andreoli of due process of law in violation of Amendment XIV, Section 1 of the United States Constitution.

49. Accordingly, Plaintiff requests that this court declare that the Setoff Provisions are unconstitutional and that Mr. Andreoli's Medicare benefits cannot be offset from Mr. Andreoli's economic damages as a collateral source payment.

### COUNT IV

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FLORIDA CONSTITUTION

50. Plaintiff incorporates and realleges the allegations above and alleges additionally or alternatively:

51. If Medicare benefits are considered collateral sources in arbitration, for Mr. Andreoli, these Setoff Provisions will entitle the Defendant Baptist CareSpot to a setoff for the total care that this program will pay on Mr. Andreoli's behalf in the future. This will leave Mr. Andreoli without the ability to recover compensation for future economic losses, rendering his unable to reimburse the government or to obtain the medical care of his choosing, and a burden on the taxpayer for the remainder of his life.

52. In this manner, the Setoff Provisions arbitrarily place Mr. Andreoli in a position different from that of a civil litigant who has not received medical care paid for by Medicare, and deprive Mr. Andreoli of equal protection under the law, in violation of Article I, Section 2 of the Florida Constitution, guaranteeing that all similarly situated persons be treated alike. Under the Setoff Provisions, Mr. Andreoli is not treated like other medical malpractice claimants who would be entitled to the full extent of his damages.

53. Accordingly, Plaintiff requests that this court declare that the Setoff Provisions are unconstitutional and that Mr. Andreoli's Medicare benefits cannot be offset from Mr. Andreoli's economic damages as a collateral source payment.

Grossman Roth Yaffa Cohen, 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134

## COUNT V

## CLAIM FOR DECLARATORY JUDGMENT THAT SECTIONS 766.207(7)(a), (c), FLORIDA STATUTES, VIOLATE THE DUE PROCESS CLAUSE OF THE FLORIDA CONSTITUTION

54. Plaintiff incorporates and realleges the allegations above and alleges additionally or alternatively:

55. If Medicare benefits are considered collateral sources in arbitration, for Mr. Andreoli, these Setoff Provisions will entitle the Defendant Baptist CareSpot to a setoff for the total care paid for by Medicare to Mr. Andreoli and that this program will pay on Mr. Andreoli's behalf in the future. This will leave Mr. Andreoli without the ability to recover compensation for future economic losses, rendering his unable to reimburse the government or to obtain the medical care of his choosing, and a burden on the taxpayer for the remainder of his life.

56. In this manner, the Setoff Provisions deprive Mr. Andreoli of due process of law in violation of Article I, Section 9 of the Florida Constitution.

57. Accordingly, Plaintiff requests that this court declare that the Setoff Provisions are unconstitutional and that Mr. Andreoli's Medicare benefits cannot be offset from Mr. Andreoli's economic damages as a collateral source payment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that a judgment be entered declaring that,

(1) Medicare benefits may not be offset from the economic damages awarded to Mr. Andreoli as a collateral source payment because such an offset would be preempted or prohibited by federal law;

(2) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mr. Andreoli because they deprive his of equal protection under the law, in violation of Amendment XIV, Section 1 of the United States Constitution;

(3) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mr. Andreoli because they deprive his of due process of law, in violation of Amendment XIV, Section 1 of the United States Constitution;

(4) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mr. Andreoli because they deprive his of equal protection under the law, in violation of Article I, Section 2 of the Florida Constitution; and

(5) Sections 766.207(7)(a), (c), Florida Statutes, are unconstitutional as applied to Mr. Andreoli because they deprive his of due process of law, in violation of Article I, Section 9 of the United States Constitution.

Dated this 18th day of December 2020.

        GROSSMAN ROTH YAFFA COHEN, P.A.
        2525 Ponce de Leon Boulevard, Suite 1150
        Coral Gables, Florida  33134
        Telephone:     305-442-8666
        Facsimile:      305-285-1668

        By:    /s/ Rachel Furst
                RACHEL W. FURST
                Fla. Bar. No. 45155
                rwf@grossmanroth.com

        CRONIN & MAXWELL, PL
        Counsel for Claimants
        4250 Lakeside Drive, Suite 204
        Jacksonville, FL 32210
        Ph: (904) 388-9555
        Fax: (904) 388-0792

        By:    */s/ Sean B. Cronin*
                SEAN B. CRONIN
                Florida Bar No. 146447
                MICHELLE L. DAVIS
                Florida Bar No. 67913
                sean@croninmaxwell.com

mdavis@croninmaxwell.com
service-cm@croninmaxwell.com


CREED & GOWDY, P.A.
Co-Counsel for Claimants
865 May Street
Jacksonville, FL 32204-3310
Ph: (904) 350-0075
Fax: (904) 503-0441

By: */s/ Bryan S. Gowdy*
      BRYAN S. GOWDY
      Florida Bar No. 176631
      bgowdy@appellate-firm.com


HARRELL & HARRELL, P.A.
Co-Counsel for Claimants
4735 Sunbeam Road
Jacksonville, FL 32257
Ph: (904) 251-1111
Fax: (904) 251-1110

By: */s/ Billie J. Taylor*
      BILLIE J. TAYLOR
      Florida Bar No. 57613
      btaylor@harrellandharrell.com